**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARRELL PARKS,** | : | **Civil No. 1:13-CV-742** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **CHARLES E. SAMUELS, JR.,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

## I.   INTRODUCTION

This is a lawsuit brought by Darrell Parks, an inmate in the custody of the

Federal Bureau of Prisons, serving a life sentence that was imposed by the District

Columbia following Parks's conviction of murder in 1991.  Parks is currently housed

at USP-Lewisburg.  The basis for this lawsuit is Parks' general contention that several

BOP officials, most of whom are high-ranking officials, have violated his right of

access to the courts and, relatedly, his right to equal protection and due process, by

applying certain regulations that govern inmate use of library facilities, and certain

alleged deficiencies in the USP-Lewisburg library holdings.  Parks claims that these

deficiencies in the law library, and the restrictions placed upon his use of the library,

impaired his efforts to obtain parole by preventing him from accessing certain

information, and is keeping him from obtaining documentation that might be of value

in his upcoming parole hearing and in additional proceedings relative to his criminal conviction in the District of Columbia courts.

The defendants have moved to dismiss the action, or in the alternative, for summary judgment on all of Parks's claims. The defendants maintain that they lack personal involvement in the alleged constitutional violations; they argue that the court lacks *in personam* jurisdiction over some of them; and they argue that Parks's claims simply fail on their merits. The motion is fully briefed and ripe for disposition. It will be recommended that the motion be granted and the case closed.

## II.   <u>BACKGROUND</u>

On October 3, 1991, Parks was convicted of murder in the District of Columbia and was sentenced to life in prison. He is currently incarcerated in the Special Management Unit at USP-Lewisburg, where he arrived on September 19, 2011. (Doc. 31, Def. SMF ¶¶ 10-12.) Parks will next be eligible for parole in September 2015. (Id. ¶ 13.) He previously appealed his criminal conviction unsuccessfully. (Id. ¶ 14.)

In his complaint, Parks names as defendants Charles E. Samuels, Jr., the Director of the Federal Bureau of Prisons; Harrell Watts, the General Counsel of the Federal Bureau of Prisons; J.L. Norwood, the Regional Director of the Federal Bureau of Prisons, Northeast Regional Office; and J.E. Thomas, the Supervisor of Education at USP-Lewisburg (collectively, "defendants"). With the exception of J.E. Thomas,

all of the defendants are administrative officials who do not work at USP-Lewisburg, but are instead charged with administering and overseeing regional or national policy for the BOP.

Parks brings this lawsuit to redress what he perceives as grave deficiencies in the library holdings at USP-Lewisburg, a lack of personnel trained in the laws of the District of Columbia, and by the application of policy regarding inmate use of electronic research materials.  Parks avers that BOP Program Statement 1315.07 violates the United States Constitution because is denies him adequate access to the courts, free copies of legal materials on account of his indigency, and violates his right to privacy by allegedly allowing BOP staff to monitor his legal research.  Parks claims that the library's deficiencies somehow caused him to be unsuccessful during a prior parole hearing, as well as an inability to acquire certain documentation to enable him to make effective arguments in the Superior Court of the District of Columbia related to his criminal conviction and sentence.  Parks also claims that the same deficiencies are impairing his ability to file motions in his ongoing attempts to set aside his nearly 25-year old murder conviction.

In a somewhat confusing charge, Parks also alleges that he cannot obtain free photocopies as an inmate, and seems to suggest he is entitled to them; and then he contends that if he is required to take on something he calls "debt encumbrances" to

pay for the copies he desires, he will have insufficient funds to purchase other necessities in the event he were ever to secure employment as an inmate. Parks baldly claims that BOP officials monitor his electronic legal research, and he claims that being forced to rely on computerized legal research is somehow itself a violation of his right of access to the courts because he speculates that computers potentially could crash, or he might otherwise be prevented from using the computers.

Parks also alleges that the law library materials available to him at USP-Lewisburg do not contain access to the laws, cases and codes pertinent to the District of Columbia, which results in him being denied effective access to the courts. Parks does not specify exactly what D.C. materials are unavailable to him, or how his inability to procure these materials has actually affected his past or future legal proceedings. Parks seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Parks's allegations are belied in important ways by the evidence presented in support of the defendants' statement of material facts. Importantly, Parks' representations regarding the inadequacy of the library materials available to him, and his ability to access these materials, is substantially contradicted by this evidence. The Federal Bureau of Prisons ("BOP") maintains certain Program Statements that prescribe policies governing inmates and programs. Program Statement 1315.07,

Inmate Legal Activities, sets forth the materials that must be made available to inmates through the Electronic Law Library ("ELL"). (Def. SMF ¶¶ 15-16.) Among other materials that are available, inmates have access through the ELL to the D.C. Code, the D.C. Court Rules Annotated, D.C. Judicial Decisions, and D.C. Case Update. (Def. SMF ¶¶ 17; Ex. A, Attach. 2, ELL Content.) Inmates also have access to case law from the Atlantic and Maryland Reporters as part of the District of Columbia content made available to USP-Lewisburg inmates. (Id. ¶ 20.) This list of content, and other content available on the ELL, is distributed by the BOP's Information, Policy, and Public Affairs Division. (Def. SMF ¶ 18.) In addition to the materials available via the ELL, inmates may solicit outside sources or other inmates for legal assistance or additional materials. (Id. ¶ 21.)

Additionally, in contrast to Parks's allegations to the contrary, the ELL does not allow BOP staff to monitor the legal research that an inmate performs. (Id. ¶ 23.) Instead, staff are limited to reviewing inmate data usage, or the time that inmates are logged onto the ELL system. (Id. ¶¶ 23-24.) BOP does keep a log of inmate print requests from the ELL, but it is not monitored and is used only for purposes of refunds or re-prints at an inmate's request. (Id. ¶ 25.)

As discussed below, notwithstanding Parks's allegations regarding the law library, his allegations are fundamentally undermined in critical respects concerning

5

both the materials available to him, and the monitoring of his research activities. Moreover, his complaints regarding being required to pay for copying costs are meritless because nothing about the BOP's policy in this regard is a constitutional violation.   Finally, Parks' claims regarding his prior litigation failings and his perceived inability to present persuasive arguments in future motions or proceedings is both speculative and, in the face of the record before the Court, unavailing. Moreover, the allegations alone are general and vague, and provide insufficient explanation as to how the library holdings, and Parks' access to them, had any materially adverse impact upon his right of access to the courts.   Accordingly, there is no basis to permit Parks' claims to proceed regarding the defendants' alleged deprivation of his right of access to the courts through their administrative oversight of the BOP and its policies; and there is no basis to permit Parks to continue to litigate claims that find no support in the law or the record.

## III.   <u>STANDARD OF REVIEW</u>

### A.     **Rule 12(b)(6) - Dismissal**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is

6

appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556.  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).  Moreover, "documents whose contents

are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").  However, the court may not rely on other parts of the record in determining a motion to dismiss.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

### B.    Rule 56(a) – Summary Judgment

The defendants have moved, in the alternative, for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id.

at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that

a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ

11

v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.Under the local rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go

beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## IV.   **DISCUSSION**

### A.   **The Pleadings are Overly General and Conclusory, and Are Insufficient to State a Claim for Denial of Parks' Right of Access to the Courts.**

As noted, this is a lawsuit that, at bottom, concerns Parks' claims that the library facilities at USP-Lewisburg are inadequate for inmates like him, who are D.C. offenders serving time in federal correctional facilities.  He avers that the library does not have sufficient D.C.-related legal materials, or sufficient personnel who are knowledgeable about D.C. law, although he is far from clear on what materials he believes must be made available to him for the USP-Lewisburg library to pass

constitutional muster, or how his lack of access to these unidentified materials amounted to a denial of his right of access to the courts.  Upon examination of the complaint, it becomes clear that Parks' allegations are entirely too general and imprecise to state a claim under the prevailing case law in this field.

Under the First and Fourteenth Amendments, prisoners have a right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).  "[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty."  Id. at 384.  Prisoners thus enjoy this constitutional right of access to the courts only in two types of cases, those being challenges (either direct or indirect) to their sentences and conditions of confinement.  Id.  Where prisoners claim that their jailers have inhibited their ability to present a past legal claim, as Parks has done here, they must show (1) that they suffered an actual injury by having lost the chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit.  Monroe, 536 F.3d at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).  Importantly, it is well-established that to do so, "prisoners must satisfy certain pleading requirements: The complaint

must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. (quoting Harbury, 536 U.S. at 416-17).

The Supreme Court also recognizes claims that may be, as Parks calls them, "forward looking" claims.  These are claims that might be brought in the future, but allegedly cannot be because "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits and the present time."  Harbury, 536 U.S. at 413. "In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate . . . .  The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  Id.

Whether a plaintiff brings a case regarding a prior legal proceeding, or about a future proceeding that he claims he cannot pursue effectively because of some official action such as an inadequate law library or some other barrier, "the ultimate justification for recognizing each kind of claim is the same."  Id. at 414.  But what is fundamental in such cases is "the recognition that the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  Id. at 415.  Thus, in backward- or forward-looking

claims regarding alleged denial of access to the courts "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the litigation." Id. More specifically, the underlying cause of action that was allegedly forfeited, or that is unable to be pursued, "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Id.

In the case of backward-looking suits, since they are brought to obtain relief that is now not obtainable in other lawsuits, "the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." Id. at 416. And, at least in the case of backward-looking claims, the allegedly lost claim must be articulated in accordance with the pleading standards prescribed by Rule 8, and which we have articulated above. Id. at 417. In any case, there must be a showing of actual injury. See Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

In this case, review of Parks' complaint reveals that he has simply not described in sufficient plausible detail the claims that he previously lost as a result of being unable to obtain some materials that he hoped to use in a parole proceeding, and he has similarly not identified what claims he will forfeit in the future as part of some

continued appeals or motions he would like to file to challenge his nearly 25-year old

murder conviction.  In short, he simply has not demonstrated injury, much less an

injury that was caused as a result of anything the defendants did.

Thus, the complaint provides this generic description of a "backward-looking"

claim that Parks is purporting to assert:

> That Bureau Officials has cause [sic] Petitioner actual
> injury in the form of a "backward-looking" suit to a
> freedom of information trying to acquire tangible
> information/documents of his program achievements for his
> initial parole hearing from DC-Lorton-DOC, as well as,
> unable to ascertain District of Columbia's Municiple [sic]
> Regulations, pursuant to the constitutional doctrine Turner
> v. Safley.

(Compl. ¶ 34.)  Nothing about this allegation is sufficient to explain how the USP-

Lewisburg library – much less the defendants' administrative relationship to that

library's holdings and operations – caused Parks any actual injury.  It is unclear what

legal proceeding Parks is claiming was affected; at most, it appears that Parks is

claiming that he was unsuccessful in seeking information through a Freedom of

Information Act request to obtain information about his program achievements at

another prison, and to present these achievements to a parole review board.  It is

entirely unclear what value, if any, the D.C. municipal code may have had to Parks'

parole hearing, and it is not clear what Parks means when he says he could not

"ascertain" these materials or how their alleged absence actually caused him to lose

17

an actual claim or right.

Parks does not describe what it was he sought to obtain, or how he was frustrated in obtaining it.  Instead, Parks has made a general, vague claim that some aspect of the USP-Lewisburg library holdings or materials impaired his efforts to secure parole, but as the foregoing makes clear, Parks's allegations fall far short of alleging that the defendants caused him actual injury or prevented him access to the courts, what exactly Parks was trying to obtain, and how it had any relevance to his parole hearings, which are not described in any way.

Parks' claims regarding motions that he may wish to file in the future in connection with his decades-old criminal conviction for murder are even less precise. Parks does not articulate in any way what claims he wishes to make, or why he cannot make them.  He does not explain what materials or information he needs to present his unspecified claims and arguments, and he does not adequately explain how he is actually foreclosed from bringing these claims.  His allegations are vague and, even in their general way, no more than aspirational or hopeful: Parks does not explain what materials or information he needs, or how it will help him with his claims (which also must be "arguable" and "nonfrivolous", Harbury, 536 U.S. at 415).  Instead, he simply suggests that he would like to make arguments about "ineffective assistance of counsel, probable cause, prosecutor's misconduct, Rule 11 violations, etc." in some

future filing.  (Compl. ¶ 38.)  In another paragraph he proclaims that he has "the right to an adequate opportunity to present his claims (of defective indictment, probable cause, ineffective assistance of counsel, malicious/prosecutorial misconduct, Superior Court Rule 11 as well as Freedom of Information Act-DC 'State') fairly and that it is required that Bureau Officials are to provide Petitioner access to reasonable [sic] adequate law library or person(s) trained in DC 'State' law for preparation of legal actions."  (Id. ¶ 29.)  Regardless of whether Parks is correct about the scope of his "rights" in this regard, he has not in any meaningful way explained how the defendants in this lawsuit have impaired his ability to access the courts to make these legal arguments, and he has made no allegations at all that could be read to state an "arguable" and "nonfrivolous" claim in the context of continuing to challenge his 1991 murder conviction.

### B.   Parks's Allegations Regarding the Adequacy of the Law Library are Belied By the Evidence

Not only do Parks' allegations fall far short of what is required to support an access-to-the-courts claim, but Parks' allegations find no support in the record outside of his own generic, self-serving claims regarding the materials he claims to be unable to access.  Thus, whereas Parks complains generally that he lacks access to "necessary books and research materials pertaining to District of Columbia's Code, Statutes, Laws, etc.", (Compl. ¶ 57), the record indicates that pursuant to Program Statement

1315.07, inmates at USP-Lewisburg are provided access the D.C. Code, the D.C. Court Rules Annotated, D.C. Judicial Decisions (including materials from the Atlantic and Maryland Reporters), and the D.C. Case Update.  (Def. SMF ¶¶ 17, 20.)  Parks thus has access to the very materials he complains about, which makes it especially difficult to understand how Parks' access to these materials amounts to a denial of his right to access the courts.

### C.      Parks' Claims Regarding Being Denied Free Photocopies Fails to State a Claim

To the extent that Parks' claims are not grounded solely in his disproven contention that he is unable to access materials that are plainly available to him over the ELL, it may be that he is claiming that his inability to obtain free copies of certain research materials is itself a violation of his right of access to the courts.  This claim also fails, however, both because inmates are not constitutionally entitled to receive free photocopying of unspecified legal materials in support of vaguely identified legal claims, Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997), but even more fundamentally because Parks has not alleged any facts, or come forward with any evidence, to show that his inability to obtain free photocopies has had any materially adverse effect on a prior or future "arguable" and "nonfrivolous" legal claim.  There is nothing to this contention that would permit Parks's claims regarding his alleged

denial of access to the courts to proceed.[1]

### D. Parks' Allegations Regarding Computer Research and Prison Officials Monitoring His Legal Research Are Unavailing, and Contradicted by the Evidence

Bundled together with Parks' claims regarding his access to the courts, and the alleged deficiencies in the USP-Lewisburg library, is his contention that it is somehow violative of his constitutional rights that he is required to perform legal research using the ELL computer system. He also claims that prison officials unlawfully monitor his legal research. These claims are also meritless and should be dismissed.

Parks does not identify any prison official who he claims has monitored his legal research, and the evidence shows that the ELL does not, in fact, allow prison officials to monitor the legal research an inmate performs. (Def. SMF ¶ 23.) The only information prison officials have access to is the amount of time that an inmate spends on the ELL, and the amount of data used. (Id. ¶ 24.) Prison officials also maintain a log of inmate requests to print, but this information is used only for purposes of

---

[1] Furthermore, Parks seems to acknowledge that he does have the ability to obtain some photocopies without paying for them, but he avers that he incurs "debt encumbrances" to do so, which he claims he should not have to suffer because it might make it more difficult for him to purchase other items if he is able to secure employment as an inmate. (Compl. ¶¶ 42-46.) Litigation involves choices. For Parks, those choices may entail incurring litigation expenses which might limit his future commissary purchases. Parks does not have a right to be relieved of these choices through some judicial fiat directing that the United States subsidize his lawsuit litigation expenses, so that he may enjoy greater commissary purchases.

issuing refunds or re-printing at an inmate's request.  (Id. ¶ 25.)  Parks' allegations regarding violations of his claimed privacy interest in his legal research are thus contradicted by the evidence.[2]

Parks' claim that being forced to use computers to perform legal research is itself a matter of constitutional dimension finds no support in the law.  Parks claims that using the ELL could present a problem if the computers were somehow to crash, or if he were in the future prevented from using them for some reason.  Parks does not allege that the computers have ever crashed, or that he has been denied access to the ELL at any time.  Thus, there is nothing to this claim, and Parks has in no way connected these speculative allegations to his core contention that his right of access to the courts has been or is being impaired.

### E.     The Defendants Lack Sufficient Personal Involvement in the Alleged Violations

Although Parks' claims plainly fail on their merits, we also note that Parks has

---

[2] Parks' suggestion that inmates should be subject to no monitoring or oversight with respect to their use of computers is, of course, also dubious.  In the prison setting it is well established that even with respect to inmate incoming and outgoing mail, the rights of prisoners "must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration."  Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  Certainly some degree of oversight of prisoner use of legal research computers is permissible, although the facts in this case indicate that there is very little direct monitoring of inmate research activity.

sued BOP officials for their alleged deprivation of his constitutional right to due process, to equal protection, and his right of access to the courts, but he has not alleged facts sufficient to show that these individuals had personal involvement in the alleged deprivations at USP-Lewisburg.   Parks seems to be claiming that the defendants had personal involvement by denying him administrative remedies, or through their roles as supervisors responsible in some way for the promulgation of BOP policies regarding prison libraries and inmate access thereto.

In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court "'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" Iqbal, 556 U.S. at 675 (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001)).  However, a Bivens claim cannot be premised upon a theory of respondeat superior, but instead must be based upon a defendant's personal involvement in the alleged unconstitutional conduct.  Thus, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

In this case, Parks has alleged that the defendants were personally involved through their roles as BOP officials and administrators, through their involvement as

ranking officials charged with promulgating and administering BOP policy, and apparently by failing to act favorably on his grievances or administrative remedies. Parks has not sufficiently alleged personal involvement on the part of any of the defendants, under any theory.

The involvement of Norwood and Watts clearly seems to be limited to their review of Parks's grievances. Participation in an after-the-fact review of a grievance or an appeal is insufficient to establish personal involvement. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Ramos v. Pa. Dep't of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing). An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no

liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. <u>See also</u> <u>Alexander v. Gennarini</u>, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. <u>See Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); <u>see also Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

<u>Pressley v. Beard</u>, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third

Circuit has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

Likewise, Parks has not alleged that any of the other defendants had any actual personal involvement in the alleged deprivations; instead, he claims that they were involved in the creation or promulgation of policies that he claims led to inadequate prison library facilities. Although there are some circumstances where a supervisory official may be liable if he participated in violating a plaintiff's rights, or directed others to violate them, or had actual knowledge of and acquiesced in his subordinate's constitutional violations, Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011), there are no plausible allegations of that sort in this case. The failure to include plausible allegations of personal involvement on the part of each named defendant further compels dismissal of this action.

## F.    Personal Jurisdiction

The defendants have also moved to dismiss the claims against defendants Watts and Samuels on the grounds that the court lacks personal jurisdiction over these individuals, who do not reside or work in Pennsylvania, and who have been named in this lawsuit purely as a result of their administrative and supervisory capacities within

the BOP.  We agree that the court lacks *in personam* jurisdiction over each of these defendants.

It is axiomatic in federal practice that in order to impose personal liability upon a defendant, a court must be vested with jurisdiction over the person and subject matter jurisdiction at issue in the dispute.  Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996).  The process by which the court may exercise personal jurisdiction over a party is outlined in Rule 4 of the Federal Rules of Civil Procedure, and is informed by well-settled decisional law.

A federal court is empowered to exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which the court sits.  Fed. R. Civ. P. 4(e).  In this case, this rule dictates that the Court apply Pennsylvania's long-arm statute.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007).  Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b).

Where a defendant has asserted a defense of lack of personal jurisdiction, the plaintiff bears the burden of showing either that the cause of action arises from the

defendant's forum-related activities, thereby giving the court specific jurisdiction, or otherwise that the defendant has "continuous and systematic" contacts with the forum, which gives rise to general jurisdiction.  Bane v. Netlink, Inc., 925 F.2d 637, 639 (3d Cir. 1991) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)); see also D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (explaining the difference between general and specific jurisdiction, and noting therefore that "it is entirely possible that a court might have personal jurisdiction in a particular case over a defendant but not have jurisdiction over it in other cases.").

The defendants have provided evidence showing that defendants Watts and Samuels do not live in Pennsylvania, do not own property in Pennsylvania, and do not work in Pennsylvania.  Indeed, it appears that these defendants have had no contacts of any kind with the Commonwealth.  (Doc. 31, Exs. D, E.) The plaintiff has not rebutted this showing in any way, and it seems clear that the Court could not exercise general personal jurisdiction over either defendant.

In order to subject a non-resident to jurisdiction, principles of due process require that the defendant have minimum contacts with the forum state of such a character that maintaining the lawsuit, and subjecting the non-resident to the court's jurisdiction, does not offend "'traditional notions of fair play and substantial justice.'"

Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).   In order for a court to find such minimum contacts, the defendant must have engaged in some act that shows he purposely availed himself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws.   World-Wide Volkwagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Where a defendant has challenged personal jurisdiction, the plaintiff must demonstrate that the non-resident defendant has the requisite minimum contacts with the forum state to permit the court to exercise personal jurisdiction over that party. Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros, Inc., 983 F.2d 551, 554 (3d Cir. 1993).

It is clear that the Court lacks general jurisdiction over defendants Watts and Samuels, as they appear to have no meaningful contacts with the Commonwealth, and certainly not continuous and systematic contact.   Defendant Watts also asserts that there is no basis to exercise specific jurisdiction over him with respect to the claims in this litigation, as his alleged involvement in the matters at issue extended no further than to play an administrative role in rejecting an appeal that the plaintiff filed with respect to a grievance, when that appeal was delivered to an office in Washington, D.C.   This action, alone, is insufficient to subject Defendant Watts to personal

jurisdiction in this Court with respect to Parks' <u>Bivens</u> claims.

Nevertheless, Parks suggests without elaboration or legal support that defendants Watts and Samuels somehow availed themselves of the privilege of conducting business in Pennsylvania through their role in the administrative grievance process, and in denying a grievance by Parks, an inmate housed at a BOP facility situated in Pennsylvania.  We find no case or other law or regulation that could possibly support this conclusion, and find the assertion to be plainly without legal merit, as it would suggest that defendant Watts and Samuels would somehow intentionally subject themselves to personal jurisdiction in any number of states simply by fulfilling their roles as administrative supervisors in Washington, D.C.

We therefore agree with defendants that the court lacks personal jurisdiction over defendants Watts and Samuels with respect to this issues raised in this case, and therefore recommend that the Court dismiss them from the suit for this reason as well.

### F.    Qualified Immunity

Finally, even if Parks had articulated sufficient facts to assert a colorable constitutional claim he purports to be bringing based upon his dissatisfaction with BOP library policies, and even if there were some evidence to support Parks' factual allegations, we would nevertheless recommend that the Court find that the defendants are entitled to qualified immunity from Parks' claims.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

"The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider

the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

In this case, the evidence that the defendants have submitted shows that Parks had and has access to a substantial amount of legal material relevant to D.C. inmates, and that his access to this material is not impeded in a way that has an adverse effect on his right to access the courts – either in the past or in the future. Parks has not articulated sufficient facts to show that he ever suffered the loss of an "arguable" and "nonfrivolous" claim, and he has not shown how the USP-Lewisburg library and his use of the material available to him has caused him to be unable to access the courts to press unspecified legal arguments related to his criminal conviction in 1991. Moreover, the defendants in this case are not alleged to have had any direct involvement in restricting Parks' access to the information that is, in fact, available to him through the ELL. Finally, courts that have considered similar claims have consistently found that the law library resources provided to inmates at USP Lewisburg pass constitutional muster. See e.g., Diaz v. Holder, 532 F. App'x 61, 62 (3d Cir. 2013); Cardona v. Bledsoe, No. 3:CV-11-0054, 2012 WL 4327042, at *9 (M.D. Pa. Sept. 20, 2012); Milhouse v. Bledsoe, No. 1:09-CV-01953, 2011 WL

5520303, at *3 (M.D. Pa. Nov. 14, 2011).  Therefore, it is difficult to see how prison officials could have understood that applying a policy which had been endorsed by courts in the past would violate some clearly established constitutional right of the plaintiff's.

Because Parks has not sufficiently articulated his constitutional claims with plausible factual allegations, and because the defendants have pointed to evidence flatly contradicting Parks' claims in any event, we do not find that any of the defendants could reasonably have believed that their alleged conduct in this case – namely, their administrative responsibilities with the BOP and their consideration and rejection of Parks's administrative remedies filed regarding his library access – violated Parks's clearly established constitutional rights.  The defendants are entitled to qualified immunity from Parks' claims.[3]

## V.    RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED THAT the Court grant the defendants' motion to dismiss, or in the alternative, for summary judgment (Doc. 30), and close the case.

---

[3] While the defendants have not separately argued qualified immunity in this motion, this court is entitled to address this defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of August, 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge